IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE L. DeGARMO, | ) | CASE NO. 1:12 CV 2740 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

  This is an action by Michelle DeGarmo under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI").[1]

  The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 24.

[3] ECF # 11.

[4] ECF # 12.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.      The Commissioner's decision**

The ALJ found that DeGarmo had the following severe impairments: mood disorder and polysubstance addiction.[11] The ALJ made the following finding regarding DeGarmo's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can comprehend, remember and carry out simple and complex task instructions; the claimant can relate adequately to supervisors and co-workers on a superficial basis but would work best in an environment that entails minimal interaction and that does not involve close supervisory scrutiny; the claimant can adapt to a setting in which duties are routine and predictable, but should not be expected to adhere to strict time limitations or production standards or quotas.[12]

---

[5] ECF # 6.

[6] ECF # 14.

[7] ECF # 21 (Commissioner's brief); ECF # 19 (DeGarmo's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 19-1 (DeGarmo's charts).

[9] ECF # 13 (DeGarmo's fact sheet).

[10] ECF # 27.

[11] Transcript ("Tr.") at 12.

[12] *Id.* at 14.

The ALJ decided that DeGarmo had no past relevant work.[13]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that DeGarmo could perform.[14] The ALJ, therefore, found DeGarmo not under a disability.[15]

The Appeals Council denied DeGarmo's request for review of the ALJ's decision.[16] With this denial, the ALJ's decision became the final decision of the Commissioner.[17]

## C.    Issues presented

DeGarmo asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, DeGarmo argues that the ALJ committed three reversible errors:

- At step two, the ALJ failed to recognize her bipolar disorder as a severe impairment.

- At step four, the ALJ improperly assigned no weight to the opinion of her treating psychiatrist, Dr. Ramirez.

- At step four, the ALJ improperly discounted her credibility.

---

[13] *Id.* at 18.

[14] *Id.* at 18-19.

[15] *Id.* at 19.

[16] *Id.* at 1-4.

[17] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. §§ 404.981 and 416.1481.

**D.      Disposition**

For the reasons that follow, I conclude that the ALJ's RFC and no disability findings have the support of substantial evidence. The denial of DeGarmo's application for SSI will be affirmed.

## Analysis

**A.      Applicable law**

***1.      Substantial evidence***

The Sixth Circuit in *Burton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 404.1527(d)(2).

[22] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27]

In *Wilson v. Commissioner of Social Security*,[28] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[29] The court noted that the regulation expressly

---

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[29] *Id.* at 544.

contains a "good reasons" requirement.[30] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[31]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[32] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[33] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[34] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[35]

---

[30] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[31] *Id.* at 546.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[36] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[37] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[38] *Blakley v. Commissioner of Social Security*,[39] and *Hensley v. Astrue*.[40]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[41] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[42] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii),

---

[36] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[37] *Id.* at 375-76.

[38] *Rogers*, 486 F.3d at 242.

[39] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[40] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[41] *Gayheart*, 710 F.3d at 376.

[42] *Id.*

(3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[43] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[44]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[45] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[46] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[47] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[48] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[49]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal

---

[43] *Id.*

[44] *Rogers*, 486 F.3d at 242.

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

-9-

inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[50]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[51] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[52] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[53] or that objective medical evidence does not support that opinion.[54]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[55] The Commissioner's *post hoc* arguments on judicial review are immaterial.[56]

---

[50] *Id.*

[51] *Rogers*, 486 F.3d at 242.

[52] *Blakley*, 581 F.3d at 406-07.

[53] *Hensley*, 573 F.3d at 266-67.

[54] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[55] *Blakley*, 581 F.3d at 407.

[56] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

-10-

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[57]

- the rejection or discounting of the weight of a treating source without assigning weight,[58]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[59]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[60]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[61] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[62]

In *Cole v. Astrue*,[63] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion that source issues is

---

[57] *Blakley*, 581 F.3d at 407-08.

[58] *Id.* at 408.

[59] *Id.*

[60] *Id.* at 409.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend*, 375 F. App'x at 551-52.

[63] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-11-

so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[64]

### 3.    *Credibility*

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[65] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[66]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.[67]

---

[64] *Id.* at 940.

[65] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[66] *Id.* at 34484.

[67] 20 C.F.R. § 416.929(c)(2).

-12-

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence normally constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[68]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence ordinarily remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[69] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[70]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible

---

[68] *Swain*, 297 F. Supp. 2d at 988-89.

[69] 20 C.F.R. § 404.1529(c)(3).

[70] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[71] A court may not disturb the ALJ's credibility determination absent compelling reason.[72]

If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[73] Unlike the requirement that the ALJ state good cause for discounting the opinion of a treating source, the regulation on evaluating a claimant's subjective complaints contains no express articulation requirement. The obligation that the ALJ state reasons for rejecting a claimant's complaints as less than credible appears to have its origin in case law.[74] The Social Security Administration has recognized the need for articulation of reasons for discounting a claimant's credibility in a policy interpretation ruling.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be

---

[71] *Buxton*, 246 F.3d at 773.

[72] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[73] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[74] *Felisky*, 35 F.3d at 1036; *Auer v. Sec. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

-14-

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[75]

The strong statement from the administrative ruling quoted above constitutes a clear directive to pay as much attention to giving reasons for discounting claimant credibility as must be given to reasons for not fully accepting the opinions of treating sources. An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[76] The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.[77] The articulation should not be conclusory;[78] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[79]

**B.    Substantial evidence review of the Commissioner's decision**

In this case the ALJ found that DeGarmo had an RFC incorporating only mental limitations. The ALJ limited DeGarmo as follows:

[T]he claimant can comprehend, remember and carry out simple and complex task instructions; the claimant can relate adequately to supervisors and co-workers on a superficial basis but would work best in an environment that

---

[75] SSR 96-7p, 61 Fed. Reg. at 34484.

[76] 20 C.F.R. § 404.1529(c)(3).

[77] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[78] SSR 96-7p, 61 Fed. Reg. at 34384.

[79] *Blom*, 363 F. Supp. 2d at 1054.

-15-

entails minimal interaction and that does not involve close supervisory scrutiny; the claimant can adapt to a setting in which duties are routine and predictable, but should not be expected to adhere to strict time limitations or production standards or quotas.[80]

The ALJ posed a hypothetical to the VE consistent with this RFC finding.[81] In response, the VE identified three jobs at the medium or light exertional level incorporating unskilled work.[82] The ALJ posed a second hypothetical eliminating jobs involving complex tasks and instructions.[83] In response the VE identified the same three jobs.[84] The VE went on to testify in response to questions by both the ALJ and DeGarmo's counsel that no jobs would exist if DeGarmo was off task 10 percent of the time.[85]

DeGarmo's case rests on the arguments that the severity of her impairments would render her off task at least 10 percent of the time, making her unemployable.

The Commissioner concedes that the ALJ did not recognize bipolar disorder as a severe impairment. Also, the Commissioner does not dispute that the ALJ's stated reason for doing so – no diagnosis of bipolar disorder by an acceptable medical source earlier than 2010 – is inaccurate. DeGarmo was expressly diagnosed with bipolar disorder by her treating

---

[80] Tr. at 14.

[81] *Id.* at 64-65.

[82] *Id.* at 65-66.

[83] *Id.* at 66.

[84] *Id.*

[85] *Id.* at 66-68.

psychiatrist, Dr. Ramirez, in April of 2009.[86] Further, her treatment notes at the Murtis Taylor Service Center consistently make reference to bipolar disorder.

Under *Maziarz v. Commissioner of Social Security*[87] and its progeny, the failure to recognize a particular impairment as severe at step two does not provide ground for reversal and remand if the limitations caused by that impairment are properly considered and compensated for in the RFC. Here, the ALJ did acknowledge that DeGarmo had a mood disorder. DeGarmo concedes that bipolar disorder is a form of mood disorder. Furthermore, DeGarmo concedes that whether characterized as mood disorder or bipolar disorder, her argument for greater limitations in the RFC based on the evidence in the transcript remains the same.

As to the treating source rule as applied to Dr. Ramirez, Dr. Ramirez is a psychiatrist on the staff of the Murtis Taylor Service Center. He completed a work ability form in April of 2009[88] that was very cursory. He concluded that DeGarmo could not sustain employment eight hours a day, five days a week because she reacts with anger to stress and can only concentrate for short periods of time.[89] The ALJ declined to give Dr. Ramirez any weight because he made the statement that DeGarmo "is considered unemployable."[90] Although

---

[86] *Id.* at 416.

[87] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240 (6th Cir. 1987).

[88] Tr. at 416-19.

[89] *Id.* at 417.

[90] *Id.*

employability or disability is a finding for the Commissioner, Dr. Ramirez did not limit his opinion to that statement.

Counsel for the Commissioner admits that the ALJ did not properly apply the treating source rule in evaluating Dr. Ramirez's opinion. She acknowledges the *Wilson* line of cases, including *Gayheart*, but argues harmless error citing in support a 2013 decision by Judge Lioi adopting the report and recommendation of Judge Knepp.[91] In that opinion Judge Lioi acknowledged noncompliance with *Gayheart* but found that the ALJ supplied sufficient reasons such as to invoke the harmless error exception to the treating physician rule.[92] The Commissioner now makes the same argument in this case.

As to the question of the ALJ's treatment of Dr. Ramirez's opinion, that opinion is cursory, conclusive and – as even DeGarmo concedes – mostly dependent on evaluations done by other persons.[93] In particular, the "psychological evaluation" cited by Dr. Ramirez in support of the diagnosis of bipolar disorder was conducted by an RN together with an APN;[94] *i.e.*, not by a physician and not by Dr. Ramirez. Moreover, while the record shows that Dr. Ramirez did make notes from his own 20-minute examination of DeGarmo on the

---

[91] *Phillips v. Comm'r of Soc. Sec.*, No. 5:12CV1997, 2013 WL 5233783 (N.D. Ohio Sept. 16, 2013).

[92] *Id.*, at *3.

[93] ECF # 22 at 5.

[94] Tr. at 421.

same day he prepared his opinion,[95] the opinion makes no direct reference to those treatment notes.

In addition, although DeGarmo contends here that Dr. Ramirez's opinion is supported by "the treatment notes, assessments and evaluations that were performed and recorded by professionals at Murtis Taylor and others prior to Dr. Ramirez completing the [f]orm [which stated his opinion],"[96] Dr. Ramirez makes absolutely no reference to any such additional findings in his opinion, beyond the single psychological assessment.[97] Thus, the question of exactly what "treatment notes, assessments and evaluations" Dr. Ramirez actually reviewed and considered as support for his conclusions – beyond the psychological assessment of two nurses and his own single exam – is necessarily a purely speculative exercise for any adjudicator.

Stated differently, the exhaustive list of supposedly supportive "evidence" cited by DeGarmo in her brief[98] is precisely the kind of *post hoc* rationalization claimants so frequently and rightly deplore when the proverbial shoe is on the other foot. Just as the Commissioner's counsel cannot here backfill an analysis left undone by an ALJ by freshly combing the record for supporting evidence the ALJ might have used but didn't, so too a claimant cannot supply a missing foundation for medical source's opinion by presenting such

---

[95] *Id*. at 412.

[96] ECF # 22 at 5.

[97] Tr. at 416.

[98] ECF # 22 at 5 n.14.

support here for the first time, with the assertion, unsupported by proof, that if such evidence existed prior to the source's opinion, it must have been seen and relied on by the source.

Here, the ALJ correctly noted that Dr. Ramirez's opinion as to any ultimate finding of disability was entitled to no weight, inasmuch as such a conclusion is for the Commissioner.[99] Beyond that, DeGarmo now asserts that the ALJ should have "further explore[d]" the limitations on pace, persistence, and concentration that were briefly noted by Dr. Ramierez,[100] because by "disregarding all other findings" of Dr. Ramirez, the "ALJ did not follow the law."[101]

An ALJ "is not bound by conclusory statements of doctors, particularly when not supported by detailed objective criteria and documentation."[102] Here, nothing in Dr. Ramirez's own treatment notes beyond a single comment that the "patient reports depression and rage"[103] provides any "detailed objective criteria and documentation" to support any specific limitations as to  DeGarmo's pace, persistence, and concentration. Indeed, what DeGarmo now argues is "evidence" that the ALJ failed to consider amounts to nothing more than the tautology that Dr. Ramirez opined that DeGarmo has limitations due

---

[99] Tr. at 18.

[100] ECF # 22 at 5-6. DeGarmo admits that the form opinion by Dr. Ramirez "could have been more detailed."

[101] *Id*. at 5.

[102] *Buxton*, 246 F.3d at 773; *Phillips*, 2013 WL 5233783, at *12 (citing *Buxton*).

[103] Tr. at 412.

to depression and rage because she told Dr. Ramirez she has depression and rage. The objective medical evidence on these issues – all of which were raised directly at the hearing by DeGarmo – was actually extensively set out and addressed by the ALJ,[104] who concluded that the limitations were not "as severe as alleged."[105]

In short, similar to the reasoning employed by Judge Lioi in *Phillips*, any error in how the ALJ complied with the articulation of "good reasons" requirement associated with denying controlling weight to the opinion of a treating source is harmless because the opinion here was so patently deficient that the Commissioner could not possibly credit it.[106] The ALJ's stated finding that Dr. Ramirez's opinion was entitled to no weight is well-supported by facts, cited above, which show that the brief conclusions on limitations are not supported by any medically acceptable clinical and laboratory diagnostic techniques, nor are they consistent with the other substantial evidence in the record.[107] Further, the fact that the ALJ conducted much of his analysis of the limitations evidence immediately prior to assigning weight to the various opinions in this matter should not obscure the fact that a detailed analysis, capable of meaningful judicial review, was conducted by the ALJ here, and that it is sufficient to show that any error in applying the good reasons requirement of the treating physician rule to Dr. Ramirez was harmless.

---

[104] Tr. at 15-17.

[105] *Id.* at 16.

[106] *Phillips*, 2013 WL 5233783, at *3 (citing *Cole*, 661 F.3d at 940).

[107] *See*, *id.*

Finally, DeGarmo argues that the ALJ should not have discounted her credibility. Dr. Pickholtz, an examining psychologist, observed that DeGarmo exhibited "no tendencies towards exaggeration."[108] The ALJ gave Dr. Pickholtz's opinion considerable weight.[109] Dr. Bergsten, a state agency reviewing psychologist, observed that DeGarmo's "alleged limitations appear credible."[110] The ALJ gave Dr. Bergsten's opinion considerable weight.[111]

The ALJ in her decision articulates extensively on credibility,[112] including extensive discussion of her daily activities,[113] and various inconsistencies between her allegations and the evidence of record. Having reviewed the evidence, I find no compelling reasons to disturb the ALJ's credibility finding.

On balance, as counsel for DeGarmo concedes, no medical source has attempted to quantify the extent to which DeGarmo would be off-task during the course of a workday or workweek. Her case rests almost exclusively on her mental impairments being so severe as to make her off-task more than 10 percent of the time. Although *de novo* DeGarmo may have a credible argument for such a limitation, substantial evidence supports the RFC with the complex task eliminated as discussed above.

---

[108] Tr. at 387.

[109] *Id.* at 17.

[110] *Id.* at 515.

[111] *Id.* at 17.

[112] *Id.* at 15-17.

[113] *Id.* at 17.

## Conclusion

Substantial evidence supports the decision of the Commissioner that DeGarmo had no disability. The denial of DeGarmo's application is affirmed.

IT IS SO ORDERED.

Dated: March 7, 2014                    s/ William H. Baughman, Jr.
                                        United States Magistrate Judge